IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PETER J. FUCHS, JR., )
        Plaintiff, ) Judge Conti
) Magistrate Judge Mitchell
vs ) Civil Action No. 10-998
)
CITY OF FARRELL, et al., )
        Defendants. )

REPORT AND RECOMMENDATION

I.     Recommendation

It is respectfully recommended that the motion to dismiss the Amended Complaint (Docket No. 28), filed by the Defendants, be granted with respect to Counts I, III, V, VI and the excessive detainment claim in Count IV, but denied with respect to Count II and the inadequate medical care claim in Count IV.

II.    Report

Plaintiff, Peter J. Fuchs, Jr., brings this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants, the City of Farrell, Southwest Regional Police Department, Chief of Police Riley Smoot, Officer Erik Gatewood, Sergeant Andrew Thomas and Officer Tedesco. Plaintiff alleges that Defendants arrested him on August 1, 2008, detained him for 31 hours during which they verbally taunted him, threatened him and subjected him to excessive force, then released him to a hospital where he was diagnosed with a serious mental condition (that they failed to recognize and treat during his detainment) and hospitalized for 11 days. He alleges that these actions deprived him of his rights under the Fourth, Eighth and Fourteenth Amendments to the Constitution.

Currently pending for resolution is a motion to dismiss the Amended Complaint, brought

on behalf of the Defendants. For the reasons that follow, the motion should be granted with respect to Counts I, III, V, VI and the excessive detainment claim in Count IV, but denied with respect to Count II and the inadequate medical care claim in Count IV.

Facts

On August 1, 2008, Plaintiff was arrested by Officer Gatewood at approximately 4:45 p.m. He was transported to the Southwest Regional Police Department and charged with crimes graded as misdemeanors. He alleges that he was not fingerprinted or photographed, but was placed in a holding cell. His requests to make phone calls for legal assistance went unanswered, and he was never taken for medical treatment. (Am. Compl. ¶¶ 15, 17-18.)[1] He alleges that, during his detainment, he was verbally taunted and threatened with physical violence by Sergeant Thomas "by telling plaintiff that he would have a taser shoved up his ass." (Am. Compl. ¶ 19.) He alleges that he was given frozen meals and told to flush them down the toilet and that he was given minimal drinks and was dehydrated when he was released. (Am. Compl. ¶ 20.)

Plaintiff alleges that:

> [He] at one point was cuffed to the rear, forcibly removed and dragged down the hallway to the processing room by Officer Tedesco. Plaintiff was once again threatened with physical violence by the threat of a taser up his ass by all [defendant] officers. Defendant Officer Thomas brandished the taser causing extreme distress and permanent emotional trauma to this plaintiff as he had no way to call for help or defend himself being handcuffed to the rear of his body.

(Am. Compl ¶ 21.) He alleges that it was apparent that he was in need of medical attention but it was denied to him. "Plaintiff was held for in excess of 31 hours with neither a prompt arraignment nor release. Plaintiff was subject to other disturbances from other detainees." (Am.

---

[1] ECF No. 4.

Compl. ¶ 22.)

At 12:15 a.m. on August 3, 2008, after 31 hours of incarceration, Plaintiff's parents were contacted by an officer on the phone who told them their son needed to go to the hospital by ambulance. He alleges that they went to the station and found him in "almost … a cationic [sic] state." His parents declined an ambulance and he had to be helped to walk out of the police station. "Plaintiff was so ill that he attempted to walk backwards into the station." (Am. Compl. ¶ 23.)

Plaintiff states that he was taken for medical treatment on August 3, 2008 "and was diagnosed with a serious mental condition. Plaintiff was hospitalized for eleven days and is still undergoing treatment for several disorders as a direct result of said incident." (Am. Compl. ¶ 24.) He alleges that the Police Department had no procedure or policy in place to ask, examine, or deal in any capacity with medical/mental treatment or examination of detainees. (Am. Compl. ¶ 26.)

He also alleges that the Police Department had no procedure or policy in regard to being in compliance with Pennsylvania Rule of Criminal Procedure 519, which indicates that a person who is charged only with misdemeanors should be released "promptly." (Am. Comp. ¶¶ 27-28.) Finally, he alleges that during his detainment, his lawn mower was stolen along with an additional estimated $3,450.00 of personal property. (Am. Compl. ¶ 25.)

Procedural History

Plaintiff filed a motion for leave to proceed in forma pauperis on July 30, 2010. The motion was granted and the complaint was filed on August 6, 2010 (ECF No. 6). On August 16, 2010, Plaintiff filed an Amended Complaint (ECF No. 4).

Count I alleges that the City of Farrell subjected him to excessive force and an excessive

3

detainment, in violation of the Fourth, Eighth and Fourteenth Amendments. Count II alleges that the City of Farrell denied him adequate medical care, in violation of Fourteenth Amendment. Count III alleges that Chief Smoot was deliberately indifferent to his right not to be subjected to excessive force and an excessive detainment, in violation of the Fourth, Eighth and Fourteenth Amendments. Count IV alleges that Officer Gatewood subjected him to an excessive detainment and was deliberately indifferent to his right to adequate medical care, in violation of the Fourteenth Amendment. Count V alleges that Officer Tedesco subjected him to excessive force, in violation of the Fourth, Eighth and Fourteenth Amendments. Count VI alleges that Sergeant Thomas subjected him to excessive force, in violation of the Fourth, Eighth and Fourteenth Amendments.[2]

On February 14, 2011, Defendants filed a motion to dismiss the Amended Complaint (ECF No. 28).

Standard of Review

The Supreme Court has recently stated that:

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [Bell Atlantic Corp. v.] Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant- unlawfully-harmed-me accusation. Id., at 555, 127 S.Ct. 1955 (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557, 127 S.Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id.,

---
[2] It is noted that, although Southwest Regional Police Department is named as a defendant in this case, none of the counts specifically allege a claim against this entity.

> at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557, 127 S.Ct. 1955 (brackets omitted).

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

Defendants argue that: 1) all of Plaintiff's Eighth Amendment claims should be dismissed because the protections of the Eighth Amendment do not apply until after conviction and sentence; 2) the claims for violations arising out of an excessive detention and other violations of Pennsylvania Rule of Criminal Procedure 519 should be dismissed because § 1983 addresses only violations of federal law and the federal constitutional standard for a warrantless arrest is that a person may not be detained for over 48 hours without a neutral magistrate's review of the probable cause determination; 3) Plaintiff has failed to state a claim under the Fourth Amendment by alleging that various defendants made threats and gestures and that Officer Tedesco pulled him; 4) Plaintiff has failed to state a claim under the Fourteenth Amendment by alleging that he was denied medical attention without showing that he had a serious medical need; 5) the official capacity claims against the City of Farrell and Chief Smoot should be dismissed as there is no proof of an underlying constitutional violation; and 6) the Amended Complaint fails to state a claim against Chief Smoot in his individual capacity.

Section 1983 Claims

It is provided in 42 U.S.C. § 1983 that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress....

The Supreme Court has held that § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." Albright v. Oliver, 510 U.S. 266, 271 (1994). See also Baker, 443 U.S. at 140; Graham v. Connor, 490 U.S. 386, 394 (1989).

However, "[c]ertain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands. Where such multiple violations are alleged, we are not in the habit of identifying as a preliminary matter the claim's 'dominant' character. Rather, we examine each constitutional provision in turn." Soldal v. Cook County, Illinois, 506 U.S. 56, 70 (1992).

Fourth Amendment

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated ...." U.S. Const. Amend. 4. This provision has been made applicable to the states by the Fourteenth Amendment. Ker v. California, 374 U.S. 23, 30 (1963). Plaintiff's allegation that he was detained excessively without being taken before a neutral magistrate for review of the probable cause for his arrest implicates the Fourth Amendment. Gerstein v. Pugh, 420 U.S. 103, 113-14 (1975).

The Supreme Court has also instructed that "all claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free

6

citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard...." Graham, 490 U.S. at 395. In addition, as explained below, a majority of courts have held that the Fourth Amendment continues to apply until an individual arrested without a warrant appears before a neutral magistrate for arraignment or a probable cause hearing. See Aldini v. Johnson, 609 F.3d 858, 864 & n.6 (6th Cir. 2010). Plaintiff alleges that he was arrested without a warrant and that he was subjected to excessive force during his detainment, but was never brought before a neutral magistrate for an arraignment or probable cause hearing. Thus, the Fourth Amendment is also implicated with respect to Plaintiff's excessive force claims.

Eighth Amendment

The Eighth Amendment protects against the infliction of "cruel and unusual punishment." U.S. Const. Amend. 8. This provision has been made applicable to the states by the Fourteenth Amendment. Robinson v. California, 370 U.S. 660 (1962). However, "its protections do not apply until 'after conviction and sentence.'" Fuentes v. Wagner, 206 F.3d 335, 344 n.11 (3d Cir. 2000) (quoting Graham, 490 U.S. at 392 n.6). Plaintiff alleges that, at the time of the events alleged in this complaint, he had not yet been arraigned, much less convicted and sentenced. Thus, the Eighth Amendment does not apply and all of Plaintiff's Eighth Amendment claims should be dismissed.

Fourteenth Amendment

The Fourteenth Amendment provides that states shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. 14. The due process clause applies when arrestees who have not yet convicted of a crime, Bell v. Wolfish, 441 U.S. 520, 533 (1979), complain of inadequate medical care, utilizing at least the standard applied to convicted criminals under the Eighth Amendment. Natale v. Camden County Correctional

7

Facility, 318 F.3d 575, 581 (3d Cir. 2003). Plaintiff alleges that he was denied adequate medical care when no one recognized that he needed a psychological evaluation. Thus, the Fourteenth Amendment is implicated in this case.

Plaintiff's allegation that he was denied the right to telephone his counsel would implicate the Sixth Amendment, but the Amended Complaint does not allege a Sixth Amendment violation. More significantly, the right to counsel does not attach until "the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information or arraignment." McNeil v. Wisconsin, 501 U.S. 171, 175 (1991) (citations omitted). Because Plaintiff alleges that he was not permitted to call his lawyer prior to being formally charged with an offense, his allegations would not state a Sixth Amendment claim.

Excessive Detention

Plaintiff alleges that Defendants detained him for over 31 hours without arraignment, in violation of Pennsylvania Rule of Criminal Procedure 519. The Rule provides that:

(A) Preliminary Arraignment

(1) Except as provided in paragraph (B), when a defendant has been arrested without a warrant in a court case, a complaint shall be filed against the defendant and the defendant shall be afforded a preliminary arraignment by the proper issuing authority without unnecessary delay.

…

(B) Release

(1) The arresting officer shall promptly release from custody a defendant who has been arrested without a warrant, rather than taking the defendant before the issuing authority, when the following conditions have been met:

(a) the most serious offense charged is a misdemeanor of the second degree or a misdemeanor of the first degree in cases arising under 75 Pa. C.S. § 3802;

> (b) the defendant poses no threat of immediate physical harm to any other person or to himself or herself; and
>
> (c) the arresting officer has reasonable grounds to believe that the defendant will appear as required.

Pa.R.Cr.P. 519(A)(1), (B)(1). The Pennsylvania Supreme Court has held that "an arrestee [must] be arraigned within six hours of arrest in recognition of the inherently coercive nature of prolonged custodial interrogation." Commonwealth v. Marinelli, 690 A.2d 203, 214 (Pa. 1997) (citation omitted).

But, as noted above, § 1983 provides a mechanism for "vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." "Section 1983 does not provide a cause of action for violations of state statutes." Benn v. Universal Health Sys., Inc., 371 F.3d 165, 174 (3d Cir. 2004) (citations omitted).

The Supreme Court has held that the Fourth Amendment requires that an individual "may not be arrested in the absence of probable cause and may not be detained for over 48 hours without a neutral magistrate's review of that probable cause determination." Stewart v. Abraham, 275 F.3d 220, 228 (3d Cir. 2001) (citing Gerstein, 420 U.S. at 114; County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991)). Although the Court in McLaughlin did not hold that detainments under 48 hours automatically pass muster, Plaintiff has not alleged any basis upon which it could be concluded that his detainment was excessive. Plaintiff's 31-hour detention does not exceed the federal standard and thus is insufficient to state a claim for relief. Therefore, with respect to his excessive detention claim, the motion to dismiss should be granted.

Excessive Force Claims

Defendants argue that Plaintiff was a "pretrial detainee" at the time of the events in question. The Supreme Court has not resolved the question of whether the Fourth Amendment continues to apply after an arrest ends and pretrial detention begins. Graham, 490 U.S. at 395 n.10. However, the Supreme Court has noted that individuals who have not had a probable-cause hearing are not yet pretrial detainees for constitutional purposes. Bell v. Wolfish, 441 U.S. 520, 536 (1979). In summarizing the law in this area recently, the Court of Appeals for the Sixth Circuit observed that:

> The majority of circuits hold that the Fourth Amendment applies until an individual arrested without a warrant appears before a neutral magistrate for arraignment or for a probable cause hearing or until the arrestee leaves the joint or sole custody of the arresting officer or officers. See Wilson v. Spain, 209 F.3d 713, 715-16 (8th Cir. 2000); Barrie v. Grand County, 119 F.3d 862, 866 (10th Cir. 1997); Pierce v. Multnomah County, 76 F.3d 1032, 1042-43 (9th Cir.), cert. denied, 519 U.S. 1006, 117 S.Ct. 506, 136 L.Ed.2d 397 (1996); Powell v. Gardner, 891 F.2d 1039, 1044 (2d Cir. 1989); McDowell v. Rogers, 863 F.2d 1302, 1306-07 (6th Cir. 1988). The Fifth Circuit, while generally taking the position that substantive due process applies after the act of arrest, see Valencia v. Wiggins, 981 F.2d 1440, 1443-45 (5th Cir.), cert. denied, 509 U.S. 905, 113 S.Ct. 2998, 125 L.Ed.2d 691 (1993), has concluded that the relevant constitutional provisions overlap and blur in certain factual contexts. See Petta v. Rivera, 143 F.3d 895, 910-14 (5th Cir. 1998) (noting that Fourth Amendment standards are sometimes used in analyzing claims technically governed by substantive due process). Other circuits hold that after the act of arrest, substantive due process is the proper constitutional provision because the Fourth Amendment is no longer relevant. See Riley v. Dorton, 115 F.3d 1159, 1161-64 (4th Cir.) (en banc), cert. denied, 522 U.S. 1030, 118 S.Ct. 631, 139 L.Ed.2d 611 (1997); Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996); Wilkins v. May, 872 F.2d 190, 192-95 (7th Cir. 1989), cert. denied, 493 U.S. 1026, 110 S.Ct. 733, 107 L.Ed.2d 752 (1990).

Aldini v. Johnson, 609 F.3d 858, 864 n.6 (6th Cir. 2010). The court concluded that: 1) placing the dividing line at the probable cause hearing has a basis in Supreme Court precedent because this proceeding makes a change in the arrestee's "legal status"; 2) the

10

Fourth Amendment controls the duration of warrantless, post-arrest, pre-arraignment custody and therefore it should also apply to evaluate the conditions of such custody; and 3) applying the Fourth Amendment also creates an incentive to hold the hearing as soon as possible. Id. at 866-67.

The Court of Appeals for the Third Circuit has not resolved this question. Nevertheless, it has noted, in dicta, that the Fourth Amendment "can apply" beyond the point of arrest. Torres v. McLaughlin, 163 F.3d 169, 174 (3d Cir. 1998) ("we refer to the Fourth Amendment as applying to those actions which occur between arrest and pre-trial detention"); United States v. Johnstone, 107 F.3d 200, 206-07 (3d Cir. 1997) ("we observe that a 'seizure' can be a process, kind of continuum, and is not necessarily a discrete moment of initial restraint…. Hence, pre-trial detention does not necessarily begin the moment that a suspect is not free to leave; rather, the seizure can continue and the Fourth Amendment protection against unreasonable seizures can apply beyond that point.") District courts within the Third Circuit have concluded that the Fourth Amendment continues to apply beyond the incident of arrest and possibly until arraignment. See Bodnar v. Wagner, 2010 WL 56097, at *6-7 (M.D. Pa. Jan. 5, 2010); Schneyder v. Smith, 709 F. Supp. 2d 368, 378 (E.D. Pa. 2010); Hill v. Algor, 85 F. Supp. 2d 391 (D.N.J. 2000).

This Court predicts that, if presented with the question, the Court of Appeals for the Third Circuit would agree with the reasoning of the Sixth, Eighth, Ninth and Tenth Circuits and apply the Fourth Amendment until such time as the arrestee has had an arraignment or probable cause hearing. Because the events as alleged in the Amended Complaint occurred prior to such a hearing, the Fourth Amendment standard will be

applied.

Under the Fourth Amendment, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397. In applying this standard, it becomes clear that Plaintiff's allegations are insufficient.

Actual Force v. Threat of Force

Defendants argue that Plaintiff's excessive force claims rest primarily on allegations of the threat of force, rather than the actual use of force, and that they are insufficient to state a claim. Numerous courts have held that verbal abuse, threats and taunts by police do not amount to a constitutional violation. See, e.g., Bender v. Brumley, 1 F.3d 271, 274 & n.4 (5th Cir. 1993); Oltarzewski v. Ruggerio, 830 F.2d 136, 139 (9th Cir. 1987); Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979); Hawkins v. Brooks, 694 F. Supp. 2d 434, 441 (W.D. Pa. 2010) (McLaughlin, J.); Green v. Thoryk, 30 F. Supp. 2d 862, 864 (E.D. Pa. 1998).

Plaintiff alleges that Officers Tedesco and Thomas threatened to abuse him with a Taser. These allegations are insufficient to state a claim for excessive force under § 1983.

In addition, he alleges that Officer Tedesco grabbed him by the upper arm "with excessive force" and pulled him down the hallway leading from his holding cell to the processing room. (Am. Compl. ¶ 52(f).) Defendants argue that the Supreme Court has held that courts are not "bound to accept as true" a "legal conclusion couched as a factual allegation." Iqbal, 129 S.Ct. at 1950. Thus, Plaintiff's allegation that Tedesco grabbed his arm "with excessive force" is not a factual allegation.

In addition, he does not allege that he suffered even a de minimis injury as a result of this

incident. "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." Wilkins v. Gaddy, 130 S.Ct. 1175, 1178 (2010) (citing Hudson v. v. McMillan, 503 U.S. 1, 9 (1992)). In Wilkins, the Supreme Court reaffirmed the principal that the extent of injury is not what matters, but whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Nevertheless, Plaintiff has not alleged that the force Officer Tedesco applied was malicious or sadistic, intending to cause harm. Therefore, the allegation is insufficient to state a claim for excessive force.

Because the Fourth Amendment claims in the Amended Complaint, namely the excessive force and excessive detainment claims, should be dismissed, Counts I, III, V and VI should be dismissed in their entirety. In addition, the excessive detainment claim against Officer Gatewood in Count IV should be dismissed.

Denial of Medical Attention

Plaintiff alleges that Officer Gatewood "denied Plaintiff medical treatment during his entire detainment even after having knowledge Plaintiff needed at minimum a psychological examination by said Plaintiff's words and actions." (Am. Compl. ¶ 47(d).) As noted above, he alleges that, by the time he was released, he was almost in a catatonic state, he was so ill that he attempted to walk backwards into the police station and he was taken to a hospital where he was diagnosed with a serious mental condition which kept him hospitalized for 11 days and he is still undergoing treatment for several disorders as a direct result of his detainment. (Am. Compl. ¶¶ 23-24.)

The Supreme Court has held that "the due process rights of [pretrial detainees] are at least as great as the Eighth Amendment protections available to a convicted prisoner." City of Revere

13

v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983). The Court of Appeals has stated that:

> In Estelle, the Supreme Court held that the Eighth Amendment proscribes deliberate indifference to prisoners' serious medical needs. In order to establish a violation of [a detainee's] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need.

Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citing Estelle v. Gamble, 429 U.S. 97, 103-04 (1976) (other citation omitted). The Court of Appeals has further stated that:

> the concept of a serious medical need, as developed in Estelle, has two components, one relating to the consequences of a failure to treat and one relating to the obviousness of those consequences. The detainee's condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death. Moreover, the condition must be "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."

Colburn v. Upper Darby Township, 946 F.2d 1017, 1023 (3d Cir. 1991) (quoting Monmouth County Correctional Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)).

Defendants contend that, although they do not dispute Plaintiff's allegation that he was suffering from some unspecified mental disorders at the time of his detention, he has not alleged that he had a "serious medical need." This argument is unavailing.

Plaintiff has alleged that he was almost catatonic, that he was so ill that he attempted to walk backwards into the police station, that he was taken to a hospital where he was diagnosed with a "serious mental condition" that kept him hospitalized for 11 days and that he is still undergoing treatment for several disorders as a direct result of said incident. Given these allegations, it is a fair inference—and one that must be drawn in Plaintiff's favor as the non-moving party—that the condition that caused these symptoms was such that a failure to treat it could be expected to lead to substantial and unnecessary suffering, injury, or death. The Court of

Appeals has held that, "when inmates with serious mental ills are effectively prevented from being diagnosed and treated by qualified professionals, the system of care does not meet the constitutional requirements set forth by Estelle v. Gamble, and thus violates the Due Process Clause." Inmates of the Allegheny County Jail v. Pierce, 612 F.2d 754, 763 (3d Cir. 1979).

Defendants have not cited a single case in which a court dismissed inadequate medical treatment claims at this stage of the proceedings on the ground that the plaintiff failed to allege a "serious medical need." Moreover, even if Defendants were technically correct that Plaintiff failed to specifically identify his mental disorder(s), there is no reason why he could not amend his complaint to do so. In fact, in his response to the motion to dismiss, he states that he was diagnosed with "several mental disorders including Bi-Polar, Psychosis, and a few others including PTSD." (ECF No. 32 at [9].) Defendants have not argued that these disorders do not constitute "serious medical needs." Therefore, with respect to Count II (against the City of Farrell) and the inadequate medical care claim against Officer Gatewood in Count IV, the motion to dismiss should be denied.

Remaining Arguments

Defendants also argue that the official capacity claims against the City of Farrell and Chief Smoot should be dismissed because there is no underlying constitutional violation and that the Amended Complaint fails to state a claim against Chief Smoot in his individual capacity. Because the Court should dismiss the claims against the City and Chief Smoot for excessive detainment and excessive force for the reasons already addressed, it is not necessary to discuss these arguments further. Thus, Count I (alleging excessive force and excessive detainment claims against the City) and Count III (alleging excessive force and excessive detainment claims against Chief Smoot in both his official and individual capacities) should be dismissed, but

Count II (alleging inadequate medical care by the City) should not be dismissed.

For the reasons cited above, it is recommended that the motion to dismiss filed by Defendants be granted with respect to Counts I, III, V, VI and the excessive detainment claim in Count IV, but denied with respect to Count II and the inadequate medical care claim in Count IV.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections within the time specified in the Notice of Electronic Filing. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections will waive the right of appeal.

Respectfully submitted,

s/Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

Dated: April 7, 2011